**TEXARKANA LIVESTOCK COMMISSION, et al.**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE.**

**Civ. A. No. TX–84–70–CA.**

United States District Court,
E.D. Texas,
Texarkana Division.

July 15, 1985.

George L. McWilliams, Hubbard, Patton, Peek, Haltom & Roberts, Texarkana, Tex., for plaintiffs.

William J. Cornelius, Asst. U.S. Atty., Tyler, Tex., for defendant.

## MEMORANDUM OPINION

JOE J. FISHER, District Judge.

Before the Court is a suit brought by two cattle auction markets located in Texarkana, Texas, which seek to enjoin the United States Department of Agriculture from enforcing certain brucellosis testing regulations relating to the interstate movement of cattle.

Specifically, the Plaintiffs complain of the refusal of U.S.D.A. to grant an exception for these markets to a recently enacted regulation requiring two brucellosis tests for adult non-vaccinated cattle brought from Arkansas, sold at the Texarkana market and then immediately returned to Arkansas. This class of cattle is subject to only one brucellosis test when they are sold at an Arkansas market. Since, Plaintiffs argue, their markets are on the border between Texas and Arkansas, and since Arkansas cattle (which make up a large portion of their business) are kept separate and watched over by an Arkansas official, it makes no sense for the Department to impose the two-test requirement upon them which may cause Arkansas cattle producers to abandon their markets. Yet the Department refuses to grant an exemption to them.

This suit is brought pursuant to the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.* (hereinafter "APA"). In essence, the APA allows a party who has been adversely affected by United States Government Agency action to judicial review of such action. By agreement of the parties, the case has been submitted to the Court on stipulated facts, deposition testimony and briefs. After a review of this evidence, the pleadings and the exhibits, this Court has concluded that the Department's action in this matter has been arbitrary and capricious and will enter an order setting aside the Department's action refusing the Plaintiff's exemption to the two-test requirement.

## I. THE FACTS

Plaintiffs are in the business of operating public livestock auction markets in Texarkana, Texas. These markets have been in operation for over twenty years. Texarkana is a border city which lies partially in the State of Texas and partially in the State of Arkansas. The convergence of the two states within the city is at a point in extreme Northeast Texas and extreme Southwest Arkansas. The Texarkana Livestock Commission Company is located within the City of Texarkana, Texas, approximately one-half mile from the Arkansas border. J & J Auction Company is located approximately three miles from the Arkansas border. The City of Texarkana, Arkansas, has no livestock marketing facility nor are there Arkansas markets within a three-county area. On the Texas side of the border, there are no other markets within a 60 mile radius. The two Texarkana, Texas, markets have traditionally served as marketing facilities for both Southwest Arkansas cattle producers as well as Northeast Texas cattle producers.

It has been stipulated that cattle of Arkansas origin account for approximately 60–70% of the cattle marketed at the Texarkana Livestock Commission Company. At the J & J Auction Company, Arkansas cattle comprise approximately 20–30% of the cattle marketed.

The regulations involved concern the spread and control of brucellosis in cattle. Brucellosis is a disease in cattle commonly known as "Bangs" disease. In cattle, the disease may result in abortions, weakened calves and reduced milk production. The disease is caused by bacteria called *Brucella*. While the disease economically affects cattle production, the meat from infected animals is not harmful for human consumption and animals with the disease are regularly sold for slaughter and processed for human consumption.

Because of its economic importance, the federal government in cooperation with the animal health agencies of the various states addresses the control of brucellosis through their regulatory functions.

The federal brucellosis regulations which govern the interstate movement of cattle provide for a system of classifying states or parts of states according to the rate of brucellosis infection. The classifications are: (1) Class Free; (2) Class A; (3) Class B; (4) Class C and (5) Quarantine. The highest rate of infection, of course, is in the quarantine category with lesser rates in between to the Class Free category. Testing requirements for interstate movement depend upon the state's classification and the type of animal involved.

The Northeast Texas area covering the Texarkana markets is classified as a Class C area. In August of 1983, the State of Arkansas was classified as a Class C State. Prior to that time it had been a Class B State. Changing Arkansas from a Class B to a Class C state primarily had the effect of imposing additional testing requirements on the *interstate* movement of a certain class of cattle from the state. Primarily affected would be adult cattle over the age of 18 months which had not been vaccinated for brucellosis and which were moved interstate for use as breeding stock.

Under federal regulations, if interstate movement is involved, an Arkansas cattle producer may not ship his adult non-vaccinated cattle to Texas markets for sale as breeding stock unless 60 days and not more than one year prior to shipment these animals had undergone an official negative brucellosis test plus a second official negative test when the animal reached the market. This will be referred to as the "two-test" requirement. On the other hand, *intrastate* marketing of this same classification of animal in an Arkansas market would be permitted with one negative test which can be administered at the market. The Government contends that the adult non-vaccinated Arkansas cattle which enter Plaintiffs' market only for a few hours and are then returned to Arkansas must meet the interstate two-test requirement.

With the imposition of the two-test requirement, the two Texarkana markets realized the obvious: although the two-test requirement would only apply to a small

percent of an Arkansas producer's marketable cattle (only to non-vaccinated animals over 18 months), it was unlikely that the Arkansas producer would choose to separately market his cattle. Instead, the cattle producer would likely abandon the Texarkana market and market all of his cattle at more distant Arkansas markets rather than be subjected to the two-test requirement. Because of the economic consequence to the markets, the Plaintiffs asked the Department of Agriculture to exempt this one class of cattle which returns immediately to Arkansas from the two-test requirement. In requesting the exemption, the markets noted the unique border position of their auctions and pointed out a longstanding cooperative agreement between the two state animal health agencies which permitted Arkansas cattle to enter the two Texas markets for sale only to Arkansas buyers and then immediately return to Arkansas under such requirements as though the livestock were marketed in Arkansas. This system of marketing had been supervised for many years by an official of the Arkansas Livestock and Poultry Commission permanently stationed in the Texas markets. These cattle never entered the breeding herds of the State of Texas.

Nevertheless, the Department refused their request for an exception. The markets then brought suit in this Court seeking review of the Department's action.

## II. THE ISSUES PRESENTED

The Plaintiffs have predicated their suit on two grounds. First, they argue that for Federal brucellosis requirements to be applicable here, there must be interstate commerce; and that in this unique circumstance there simply is no interstate commerce.

Second, and with much more force, the Plaintiffs argue that the U.S.D.A.'s denial of an exception should be set aside pursuant to 5 U.S.C. Sec. 706 of the APA, which provides that a Federal Court should set aside agency action when it finds that agency action was:

(1) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) Contrary to Constitutional right, or

(3) Without observance of procedure required by law.

The commerce clause argument does not persuade the Court. But for the reasons set out below, the Court is persuaded that the U.S.D.A.'s action was arbitrary and capricious and will set aside such action.

## III. DISCUSSION

Is this a matter of interstate commerce?

Article 1, Section 8 Cl. 3 of the United States Constitution, commonly known as the Commerce Clause, provides that Congress shall have plenary power to regulate commerce among the several states. *See Gibbons v. Ogden*, 9 Wheat 1, 196–197, 6 L.Ed. 23 (1824). This power includes the authority of Congress to delegate its responsibilities to the U.S.D.A., and for the U.S.D.A. thus to regulate matters of interstate commerce coming within its purview.

The Plaintiffs assert, however, that "in practical terms" interstate commerce is not involved here, and that the U.S.D.A. has no power here. Despite the fact that the cattle do cross from Arkansas to Texas, Plaintiffs state, the nature of the business is such that in functional terms the Arkansas cattle are concerned only with Arkansas commerce. Arkansas cattle are sold to Arkansas buyers. They are always kept separate from Texas cattle; and indeed, they are inspected by an inspector from the Arkansas Livestock and Poultry Commission stationed permanently at the Texarkana markets. In sum, Plaintiffs argue, and in realistic terms, the shipment of the Arkansas cattle is an intrastate affair, and moreover, does not have a real and substantial effect on interstate commerce. It appears to the Court, however, that case law dictates a finding that when the livestock cross a state boundary, they are considered to be in interstate commerce. This is especially true when the harm regulated against is the threat of an infectious disease. *See e.g. Thornton v. United States*, 271 U.S. 414, 425, 46 S.Ct. 585, 588, 70

L.Ed. 1013 (1926). *Cf. Maryland v. Louisiana*, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981); *Powell v. United States Cartridge Company*, 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017 (1950).

█ Even if this is not so, it has long been held that even a purely intrastate activity substantially affects interstate commerce. *State of Texas v. United States*, 730 F.2d 339 (5th Cir.1984). *See also Heart of Atlanta Motel v. United States*, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964). Congress, through the U.S.D.A., has chosen to regulate movement of cattle, and its reason is to prevent disease. Accepted commerce clause analysis established that a court must defer to a Congressional finding that a regulated activity substantially affects interstate commerce as long as there is any rational basis for such a finding. *State of Texas, supra*, at 348. Clearly, there is a rational basis for the regulation here. The interstate movement of cattle may cause the interstate spread of brucellosis. Thus far, it is clear the regulations have a rational basis. There this Court's inquiry ends.

## IV. WAS THE AGENCY'S ACTION ARBITRARY AND CAPRICIOUS?

### A. *The Scope of Review*

█ In reviewing an action of a Federal agency, this Court is bound to follow a narrow standard of review. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Orleans Audubon Soc. v. Lee*, 742 F.2d 901 (5th Cir.1984). The Agency action is entitled to a presumption of regularity; and this Court must not substitute its judgment for that of the agency. *Overton Park, supra*, 401 U.S. at 415–16, 91 S.Ct. at 823–24. Since there is no argument regarding whether the U.S.D.A. acted within the scope of its authority, acted constitutionally, or whether there was any procedural irregularity, this Court's review must focus only on whether the agency's action was arbitrary, capricious or an abuse of discretion. *Louisiana Environmental Soc. Inc. v. Dole*, 707 F.2d 116 (5th Cir. 1983).

█ Despite the limited standard, this Court does have the power to overturn the agency's action. The Court "must accord the agency considerable, but not too much deference." *American Petroleum Institute v. E.P.A.*, 661 F.2d 340, 349 (5th Cir. 1981). It is indeed true that an agency's decision need not be ideal or even perhaps correct to be validated by this Court. Yet the Court must not simply "rubber-stamp" a decision, either. The Court must make a searching and careful review of the facts of an agency action. *Overton Park, supra*, 401 U.S. at 416, 91 S.Ct. at 823.

In sum, far from washing its hands of the matter, a court must make a thorough, probing in-depth review of the action, and must find that the agency gave at least minimal consideration to the relevant facts. *Overton Park, supra*, 401 U.S. at 415, 91 S.Ct. at 823; *Louisiana Env. Soc., supra*, at 119; *American Petroleum Inst., supra*, at 349. With these guidelines in mind, the Court will proceed to examine the facts of the instant case.

### B. *The Requested Exemption*

The Plaintiffs in the instant case, after notification of the pending enforcement of the "two-test" requirement, requested that Dr. John Atwell, Deputy Administrator for Veterinary Services of the U.S.D.A., grant an exemption excluding the narrow class of cattle in issue from the requirement.

Plaintiffs did not act without any regulatory basis. A specific provision of the brucellosis regulations provides:

> The Deputy Administrator, Veterinary Services, may upon request, in specific cases, permit the interstate movement not otherwise provided for in this subpart of cattle under such conditions as he may prescribe in each case to prevent the spread of brucellosis. The Deputy Administrator, Veterinary Services will promptly notify the appropriate livestock sanitary official of the states involved of any such action.

9 CFR pt. 78 Sec. 78.12.

Dr. Atwell initially denied the request. Nevertheless, Dr. Atwell agreed to review

the Texarkana situation. There is evidence in the record to support a finding that this review was undertaken in large part simply to mollify United States Senator David Pryor of Arkansas, who had made inquiries into the matter, and was not meant to be any "hard look" at the issue. Two U.S. D.A. officials spent one day at each market.

Following the officials' trip, the exemption was again denied. The Department based its denial on the fact that an exception could not be made for these two livestock markets without making a regulation change which would allow border markets in other Class C states the same rights. There is a dispute over whether Dr. Atwell believed that he lacked authority to grant the exemption, or whether he simply did not wish to grant it. In essence, it seems that Atwell believed that an exemption under Section 78.12 should be limited only to "unique and unforeseen circumstances." Atwell did not believe those circumstances were present. Whether he had a reasonable basis for holding that belief is the focal point of this lawsuit.

### C. The Circumstances: Were They "Unique"?

#### The Disease

As an initial matter, it should be noted that while brucellosis is a contagious disease, the likelihood of transmission from mere proximity is limited. Brucellosis is basically transmitted through cow's milk, the aborted fetus of a brucellosis-infected cow, or through the after-birth of an infected cow. Cattle are quite likely to contract brucellosis from sniffing or licking infected material, or from having it infect their water supply. There is little likelihood that an infected Arkansas cow will infect a Texas cow simply by standing next to it. That likelihood is decreased when the cattle are kept separately, as they are at the Texarkana facilities. In fact, the U.S.D.A. allows infected cattle to be sold along with uninfected animals at the same market as long as the infected cattle are marked as animals to be sold for immediate slaughter (meat from infected cattle is fit for human consumption.) The U.S.D.A. obviously recognizes the economic necessity of allowing such a marketing procedure.

#### The Marketing Procedure at Texarkana

Given this nature of the disease, the Court will consider the safeguards taken by the markets to separate Arkansas and Texas cattle. Each Arkansas animal that enters one of the Plaintiff's markets is first marked for identification with a U.S.D.A. tag. The animal is then identified as to state of origin, with the name of the owner and a description of the animal being recorded. A red tag is attached to an Arkansas animal; if it has been vaccinated, an orange tag is attached allowing sale even to a Texas buyer. A red-tagged animal must undergo a brucellosis test before it can proceed to sale. When it enters the auction ring, it is identified as an Arkansas animal and buyers are instructed that it may be sold only to an Arkansas buyer and returned to Arkansas, unless it is a slaughter animal. Throughout this procedure the Arkansas cattle are held separately from Texas cattle. An Arkansas inspector is on hand to monitor the sale.

#### The Impact on the Regulation on the Markets

In August, 1983, when the U.S.D.A. downgraded Arkansas' brucellosis classification from Class B to Class C, this was apparently the only time that a state's status has been thus downgraded. The primary effect was to impose the additional testing requirements on cattle moving interstate.

Though the "two-test" requirement applies only to a small number of cattle, it has an impact on the entire market structure. To market all his cattle at the Texarkana markets, an Arkansas cattle producer would have to submit a portion of his cattle to an extra test. Logic dictates, and the Department observed, that the cattle producer will simply take all his cattle to market where no extra test is required for any of them: an Arkansas market.

The Defendant does not dispute that economic hardship will result to the Plaintiffs, though it states its extent cannot be known. The admitted result of Arkansas

producers switching to Arkansas markets also raises another question: Since Arkansas buyers will remain in an area where only one test is required, their risk of brucellosis infection will remain the same; and therefore, what good does the two-test requirement do. The Plaintiffs also argue that enforcement of the two-test requirement at these markets may encourage smuggling, ear-tag removal, and misrepresentation of state of origin. These evasions, of course, would serve to damage the brucellosis eradication program.

### D. Were These Matters Adequately or Reasonably Considered?

Prior to the downgrading of Arkansas to a Class C state, the U.S.D.A. certified, as required by the Regulatory Flexibility Act of 1980, 5 U.S.C. Sec. 601 *et seq* (1980) that no regulatory flexibility analysis would be required because the change "would not have a significant impact on a substantial number of small entities."[1] The U.S.D.A., however, could produce no documents that indicated how the Department reached that conclusion. There are generalized economic reports that concern the cost-benefit justification for public spending on various brucellosis controlled programs. There is no mention, however, of the effect on small entities. Nor does it seem that any study or any supporting documents exist that consider that effect. This Court, of course, is not ruling on the propriety of the Department's certification. Yet, in light of the now-admitted economic consequences, it does seem that such a certification should be supported. The record indicates the issue was simply ignored when the change was first made and then ignored again when Plaintiffs specifically requested the U.S.D.A. to consider their exemption request.

Moreover, it appears to the Court that the Department's consideration of whether or not Texarkana is indeed a unique market is flawed. Only by a comparison of the Texarkana situation to other markets does it seem possible to make a reasoned decision with regard to the Plaintiff's requested exemption. The deposition testimony of the Deputy administrator reveals that he merely "suspects from working in the field that there are other border markets that have the same situation as the Texarkana markets." But he has pointed to none. It also appears that Arkansas is the only state which has had its classification downgraded. It further appears that the Texarkana markets are the only markets in the United States that have an uninterrupted 20 year history of supervision by animal health authorities of an adjoining state to permit the sale of certain of its state's cattle in a neighboring state's market as though the market were physically located within its own state. Mere suspicion on the part of the Department that there are other markets similarly situated is not sufficient to meet the standard required for Department action.

For the Department to argue that the granting of an exception to the Texarkana markets would prompt similar requests from other markets begs the question of an analysis of the Texarkana market. Merely because other markets may call upon the Department to grant similar exceptions does not constitute a basis for refusing to take an in-depth look at Plaintiff's request. Such reasoning smacks of convenience and ease of administration rather than reasoned examination of a particular market situation.

Finally, from strictly an animal health standpoint, it is not insignificant that the animal health agencies of both Texas and Arkansas supported Plaintiff's request for an exemption. Obviously, these are the

---

**1.** Section 603 and 604 of the Regulatory Flexibility Act of 1980, 5 U.S.C. Sections 603, 604, require that when an agency proposes (Section 603) and promulgates (Section 604) a rule subject to Section 553 of the Administrative Procedure Act, 5 U.S.C. Section 553 (1982), it shall prepare and make available to the public an initial (Section 603) and final (Section 604) "regulatory flexibility analysis," describing *inter alia* the impact of the rule on small entities. The requirement can be eliminated, however, by the agency head's certification under Section 605(b), that the rule "will not ... have a significant impact on a substantial number of small entities."

two states most affected by the risk of the disease. Representatives of each of the animal health agencies testified that the market system in place at Texarkana did not pose a significant risk to the spread of brucellosis. While agency expertise deserves deference, no deference is due when the agency action is supported more by reasons of convenience and administration than by searching and careful inquiry into the facts involved.

■ Accordingly, the Court finds that the Department's action in denying Plaintiff's requested exemption was arbitrary and capricious and such action is hereby set aside. This Court has heretofore entered its Order preserving the status quo between the parties. This Order is continued in full force and effect pending remand to the United States Department of Agriculture for further consideration or proceedings consistent with this opinion.